Statement of Claims

05- 46

05- 464

1) About the date of May, 2000, The Plaintiff was sentenced in the Superior Court of Kent County, By the Honorable Dupont Ridgely, in Criminal Action No. #IK99-12-0537, To serve one (1) year at Supervision level IV (work release) followed by one (1) year at Supervision level III Probation.

2) After serving a separate sentence, the Plaintiff began serving the above stated sentence. On or about the date of March 16, 2004, And was transferred to the Morris Correctional Institution (MCI) (work release) On or about June 17th, 2004 to complete the level IV sentence.

3) On or about the date of June 28th, 2004, the Plaintiff began employment at Teszlor Roofing Company.

Denial of Due Process

4) After returning from work on June 28, 2004 at approximately 5:00 p.m. After Dinner had been served, Around 8:00 p.m. the Plaintiff went to the vending Machine to obtain a snack.

5) The vending Machine is located just outside the housing unit door of B-Block. Where Plaintiff is housed.

6) Residents are normally allowed to leave their Blocks to use the vending machines.

7) While waiting in line to make a purchase the Plaintiff was approached by C/O Nocks, and informed that he (the Plaintiff) could not make a purchase.

8) The Plaintiff was then instructed to return back to his assigned Block.

9) The Plaintiff asked C/O Nocks, "why", C/O Nocks respond, "Because I said so."

10) As the Plaintiff stated walking towards B-Block, the Plaintiff mumbled, "Fuck you, Sucka-Ass-Motha-Fucka".

11) C/O Nocks asked the Plaintiff, "what did you say?" and Plaintiff repeated the statement to C/O Nocks.

12) The Plaintiff was told that he would recieve a disciplinary infraction.

13) The Plaintiff was later called out and was given his required preliminary hearing by C/O Nocks

14) The Plaintiff requested to be present at his disciplinary hearing and watched C/O Nocks mark the appropriate space on the form

that directed the Plaintiff's request.

15) The Plaintiff was then placed in a "holding cell" for approximately three (3) hours before being allowed back to his assigned unit.

16) On June 28, 2004, the following morning, at approximately 7:30 AM. the Plaintiff was called out by staff to go out to work.

17) Upon returning from work the Plaintiff was informed by staff that the MDT Board had held a hearing on his disciplinary report and had found him guilty.

Unlawful imprisonment / Cruel and unusual punishment

18) The MDT Board had decided that the Plaintiff should serve a 14 day sanction at a level II facility at the Sussex Violation of Probations-Center. And upon completion of that sanction, to be held at C-VOP to await bedspace back at MCI.

19) On the morning of July 1, 2004, the Plaintiff was transferred to S-VOP to begin serving the 14 day sanction at that facility.

Denial of Due Process

20) Upon the Plaintiff's arrival at S-VOP, he was given a copy of the sanction-sentence for the first time. On which was a space that questioned the Plaintiff's

desire to appeal the sanction and or hearing decision.

21) The Plaintiff filled out the paper work and wrote out his grounds for appeal of both the disciplinary hearing and sanction.

22) However, when Plaintiff requested materials to assist the mailing of these said materials to the appropriate people, the Plaintiff was informed that, It was S-VOP's policy that all residents filled out a "pay-to" and wait to receive stamps and envelopes from the mail room to be able to send any mail out.

23) Due to the mail requirements the Plaintiff could not meet the appeal time line of 72 hrs.

24) The Plaintiff, made repeated request to staff to speak to a counselor concerning the sanction and appeal status and procedures.

25) C/O Jackson informed the Plaintiff that the counselor said, He would have completed the sanction before the counselor could get around to seeing him.

26) S-VOP, is used by the Department of Corrections as a Penal facility for level I-IV individuals. and it is extremely confrontational. And they do not allow repeated confrontational request.