Unlawful imprisonment

27) On or about the date of July 14, 2004, the Plaintiff, was transferred to C-VOP to await bed-space at M.CI.

28) Plaintiff, was assigned to Defendant Scala's case load.

29) Defendant Scala, first met with Plaintiff, approximately two weeks after being at C.VOP, and informed Plaintiff that he would be placed on the transfer waiting list, to return to MCI. which was very long. and to be prepared for a long wait.

30) Approximately one (1) month later, after noticing numerous offenders being transferred back to MCI, the Plaintiff, requested to meet with Defendant Scala, again concerning Plaintiff's transfer. Defendant Scala, further advised the Plaintiff to be patient that his name was in fact on the transfer list.

31) Plaintiff contracted a severe form of "Shingles" which is contagious.

32) The Plaintiff was transferred to the infirmary at the Delaware Correctional Center for treatment and was told that he acquired "Shingles" due to stress.

33) After five (5) days of treatment the Plaintiff was transferred back to C-VOP.

34) Approximately one month after Plaintiff's return to C-VOP, Plaintiff met with Defendant Scala, and asked her if there was any way she could expedite the Plaintiff's transfer back to MCI. Defendant Scala, said there was nothing she could do because,

35) transfers was under the authority and control of Defendant Micheal Records.

Denial of Due Process

36) Defendant Scala, further advised the Plaintiff of the option of filing a Modification of Sentence Motion with the Courts. But stated that she (Defendant Scala) could not assist him.

37) Defendant Scala, provide Plaintiff with a Modification of Sentence form.

38) However, Plaintiff lacked the requested knowledge required by the form and the legal knowledge to go about the proceeding properly.

39) C-VOP does not provide legal assistance to residents.

40) Although Plaintiff completed and filed the provided

paper week with the Superior Court's prothonotary's office, Plaintiff received no reply.

Misuse of Force - Assault

41) On or about the date of Nov. 26, 2004, at approximately 5:10 A.M. Pod 2# (where Plaintiff is housed) was called to the chow Chow Hall for breakfast.

42) After being seated for only a few minutes Defendant Bramble called the Plaintiff's table to dump their food trays and leave the Chow Hall.

43) Pods are often given very little time to eat to purposely cause residents to throw their meal away as a means of punishment for some earlier action.

44) The Plaintiff remained seated and attempted to finish eating his meal as others filed out.

45) Defendant walked up on Plaintiff and said, "Let's go!"

46) Plaintiff responded by requesting more time to finish the meal.

47) Defendant Bramble, pulled out a can of "Cap-stun" and began shaking the can - indicating that if Plaintiff did not move emediately he would be sprayed.

48) The Plaintiff promply got up and dumped his tray and went back to his housing area.

49) As the Plaintiff exit the chow Hall he noticed the clock on the wall read 5:18 AM.

50) Upon returning to the housing area, Plaintiff consulted the "Offenders Hand Book" [Rule Book] under the Heading: "Rules-Chow Hall" all offenders are supposed to be allowed no least than 15 Minute to eat.

51) Defendant Bramble, only allowed the Plaintiff a total of eight (8) minutes. Even less where command was first issued.

52) Defendant Bramble entered the Plaintiff's Housing Area alone

53) Plaintiff presented the rule Book to Defendant Bramble and called his attention to the 15 Minute requirement for meals.

54) Plaintiff further pointed out to Defendant Bramble that he is not allowed to pull out his "Cap-Stun" unless he is in a threatening situation. And;

55) That Plaintiff intended to file a Grievance against the denied Chow Hall time and Defendant Bramble's Misuse of the "Cap-stun".

56) As the Plaintiff turned and began walking to his bunk (bed) Defendant Bramble stated, "I'm tired of your shit!" as he,

57) Took out his "Cap-stun" can and began spraying the Plaintiff.

58) While spraying the Plaintiff, Defendant Bramble, purposely attempted to spray the Plaintiff in the mouth by,

59) Following the Plaintiff's mouth with the can as he sprayed and as the Plaintiff attempted to turn away.

60) Plaintiff raised his left arm in a attempt to blindly block Defendant Bramble's hand that held the Cap-stun as Plaintiff turns his back to Defendant Bramble.

61) As Plaintiff turned away, Plaintiff bumped into a plastic chair and attempted to use the back of the chair to block Defendant Brambles efforts to spray him in the face and mouth. However,