**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| KENNETH L. HOLLAND, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) C. A. No. 05-464-SLR |
| | ) JURY TRIAL DEMANDED |
| STANLEY TAYLOR, et al., | ) |
| | ) |
| Defendants. | ) |

**DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT**

STATEMENT OF FACTS

1. This prisoner civil rights action was filed by the *pro se* plaintiff Kenneth L. Holland ("Plaintiff") on March 30, 2004 pursuant to 42 *U.S.C.* § 1983. [D.I. 2]. Plaintiff named as defendants Stanley Taylor, Vincent Bianco, Michael Records, Bob George, Michael Costello, Barbara Costello, the Department of Correction, Stephen Devine, Helen Moore and Adam Bramble[1] ("Defendants"). There is currently pending before this Court a Motion to Amend, which seeks to add Raymond, Justice and DeMarco as defendants. [D.I. 50]. Plaintiff's claims against Defendants are based on the following allegations.

2. In June 2000, Plaintiff was sentenced for a number of offenses. *See* Sentence Order attached hereto as Exhibit A. The Sentence Order included a one year sentence at Supervision Level IV Work Release, when bed space became available. *Id.* After serving another sentence, Plaintiff arrived at Central Violation of Probation Center ("CVOP") in March

---

[1] Defendant Adam Bramble is not included as a movant in this Motion for Summary Judgment.

2004, awaiting bed space at Morris Community Correctional Center ("MCCC"),[2] which is a work release program. [D.I. 2]. *See* Holland Transcript attached hereto as Exhibit B at 53-54.

       3.       Plaintiff was transferred to MCCC in June 2004. [D.I. 2]. On June 28, 2004, he was involved in a dispute with a correctional officer at MCCC and received a program violation. The Multi-Disciplinary Team ("MTD") met the next day to review the program violation. Plaintiff claims that he was not present at the meeting although he had asked to be present. He was sanctioned to serve 14 days at the Sussex Violation of Probation Center ("SVOP"). After serving the 14 days, he was to be transferred to CVOP to await bed space back at MCCC. *Id. See also* Program Violation attached hereto as Exhibit C.

       4.       Plaintiff arrived at SVOP on July 1, 2004. [D.I. 2]. He claims that he wanted to file a written appeal of the sanction. However, he did not have access to writing supplies. He asked unspecified individuals at SVOP for supplies, and was told that he need to fill out a "pay to" and wait to receive supplies from the mail room. Plaintiff asserts that due to this policy, he was prevented from filing his appeal within a 72 hour deadline. *Id.* It is undisputed that he never appealed the sanction in question. *See* Exhibit B at 75.

       5.       On July 14, 2004, Plaintiff arrived at CVOP. [D.I. 2]. Plaintiff complains that he remained at CVOP and was never transferred back to a work release program, although he repeatedly asked to be transferred. On November 26, 2004, while at CVOP, Plaintiff became involved in an altercation with Defendant Adam Bramble, with the result that Plaintiff was transferred to Delaware Correctional Center, a Level V facility. *Id.*

---

[2] MCCC is referred to as MCI in the Complaint.

6.       Plaintiff has asserted a number of claims against Defendants based on these factual allegations.  First, he alleges that the MDT members' failure to permit him to be present at their meeting on his program violation constituted deliberate indifference and due process and equal protection violations.  The MDT members also sanctioned Plaintiff "outside guidelines" and failed to provide him with a fair and timely appeal process.  Plaintiff alleges that the MDT members were Bill Etto,[3] Helen Moore and Steven Devine.[4]  [D.I. 2].  *See* Exhibit B at 59.

7.       Plaintiff also claims that staff at SVOP prevented him from filing a timely appeal of his sanction due to their policy regarding mailing supplies.  [D.I. 2].  He also suggests that SVOP staff should have realized that he had been sanctioned improperly and should not have been at SVOP.  *See* Exhibit B at 76-78.  Defendant Bob George is the Warden at SVOP.  Plaintiff testified that he sued Warden George because he oversaw departments and individuals at the facility and was responsible for ensuring that all "requirements" were met.  *Id.* at 75.

8.       Defendant Michael Costello is the Security Supervisor at SVOP.  [D.I. 33].  Plaintiff asserts that Michael Costello should have reviewed Plaintiff's case when Plaintiff arrived at SVOP.  Exhibit B at 76.  Defendant Barbara Costello is a Transfer Officer at SVOP.  [D.I. 33].  Plaintiff alleges that she should have realized that there was a "discrepancy" in Plaintiff's sanction and notified the proper authorities.  Exhibit B at 78.

9.       Plaintiff claims that, when he returned to CVOP to await bed space at MCCC (work release), staff there either prevented or did not assist in his transfer.  *Id.* at 96-97.  With

---

[3] Bill Etto was not served with the Complaint.
[4] The Program Violation indicates that Moore and Devine were not on the MDT that heard the program violation. *See* Exhibit C.  It appears that Plaintiff's pending Motion to Amend is an attempt to add as defendants the individuals who heard his program violation.

respect to this claim, Plaintiff sued Cindy Scala, a counselor at CVOP, who has not been served with the Complaint. He also named Michael Records, a Probation and Parole Supervisor at CVOP, as a defendant. [D.I. 33]. Plaintiff testified that he spoke with Michael Records regarding his concerns. Exhibit B at 96-97. Plaintiff asserts that he was "unlawfully imprisoned" at CVOP because he was not returned to the work release program, and that bed space should have been held for him there. *Id.* at 68, 96.

10.     Finally, Plaintiff has named as defendants Vincent Bianco, Warden of MCCC and CVOP, and Stanley Taylor, Commissioner of the Department of Correction. As to Warden Bianco, Plaintiff's claim against him is based on allegations that he is responsible for all inmates at MCCC and CVOP. *Id.* at 102. As to Commissioner Taylor, Plaintiff claims that he was responsible for having policies in place that would have prevented the sanction in question and ensured Plaintiff's return to his "original status." *Id.* at 104.

## MEMORANDUM OF LAW

The Court shall grant a motion for summary judgment if "there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue is genuine if the jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The burden of proof is on the moving party to demonstrate the absence of material issues of fact, and inferences drawn from the facts must be viewed in the light most favorable to the nonmoving party. However, once the moving party advances evidence in support of its contentions, the nonmoving party must go

beyond the pleadings and introduce affidavits and other evidence that will create a genuine issue of fact in order to avoid summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

There is no genuine issue of material fact as to the liability of Defendants in their official and individual capacities and, therefore, they are entitled to judgment as a matter of law.

**I.      UNDER THE ELEVENTH AMENDMENT, DEFENDANTS CANNOT BE HELD LIABLE IN THEIR OFFICIAL CAPACITIES.**

"[I]n the absence of consent, a suit [in federal court] in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment." *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984). This preclusion extends to state officials when "the state is the real, substantial party in interest." *Id.* at 101 (*quoting Ford Motor Co. v. Dep't of Treasury*, 323 U.S. 459, 464 (1945)). "Relief sought nominally against an [official] is in fact against the sovereign if the decree would operate against the latter." *Id.* (*quoting Hawaii v. Gordon*, 373 U.S. 57, 58 (1963)). A State may waive its Eleventh Amendment immunity. However, such waiver must constitute an "unequivocal indication that the State intends to consent to federal jurisdiction that otherwise would be barred by the Eleventh Amendment." *Ospina v. Dep't of Corrections*, 749 F. Supp. 572, 578 (D. Del. 1990) (*quoting Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 238 n.1 (1985)).

In this case, the State of Delaware has neither consented to Plaintiff's suit nor waived its immunity. Therefore, under the Eleventh Amendment, Defendants cannot be held liable in their official capacities.

5

## II. THE DEPARTMENT OF CORRECTION CANNOT BE HELD LIABLE BECAUSE IT IS NOT A PERSON WITHIN THE MEANING OF 42 *U.S.C.* § 1983.

To state a claim under 42 *U.S.C.* § 1983, Plaintiff must allege the violation of a right secured by the Constitution or laws of the United States and must show that the violation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988).

Plaintiff has named the Delaware Department of Correction as a defendant in this action. The Department of Correction is an agency of the State of Delaware. *See Green v. Howard R. Young Correctional Inst.*, 229 F.R.D. 99, 102 (D. Del. 2005). Consequently, the Department of Correction is not a "person" within the meaning of 42 *U.S.C.* § 1983. *Id. See also Ospina*, 749 F. Supp. at 577.

Because the Department of Correction is not a "person" within the meaning of Section 1983, it cannot be held liable to Plaintiff and is entitled to judgment as a matter of law.

## III. DEFENDANTS ARE ENTITLED TO JUDGMENT BECAUSE PLAINTIFF HAD NO CONSTITUTIONAL RIGHT TO PARTICIPATE IN THE WORK RELEASE PROGRAM.

Plaintiff's claims against Defendants are based on his assertion the he had a constitutional right to participate in the work release program at MCCC. According to Plaintiff, the MDT members violated his rights by failing to allow him to participate in the hearing on his program violation and by improperly sanctioning him to time at SVOP without providing for his immediate return to MCCC. The staff at SVOP prevented his timely appeal of the sanction and did not review his case, with the result that the improper sanction was not remedied and he was not returned to MCCC. Staff at CVOP improperly prevented his transfer to MCCC.

Plaintiff's claim that he had a right to participate in the work release program is not supported by the law. Therefore, Defendants are entitled to summary judgment.

Inmates are entitled to certain due process protections in prison disciplinary hearings. *Wolf v. McDonnell,* 418 U.S. 539, 563-71 (1974).[5] However, an inmate is entitled to those due process protections only where there has been a deprivation of a liberty interest. *Id.* at 557-558. The Due Process clause confers no liberty interest in freedom from state action which is taken "within the sentence imposed." *Sandin v. Conner*, 515 U.S. 472, 480 (1995). In general, state created liberty interests protected by the Due Process clause are limited to restraints on inmates that impose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Griffin v. Vaughn,* 112 F.3d 703, 706 (3d Cir. 1997) (*quoting Sandin*, 515 U.S. at 484).

The Third Circuit has held that an inmate's confinement in administrative segregation for 15 months did not impose an atypical and significant hardship. *Griffin,* 112 F.3d at 706-709. In *Sack v. Cancino*, 1995 WL 498709, at *1 (E.D. Pa. Aug. 21, 1995) (attached hereto as Exhibit E), the court held that, assuming that plaintiff was not given the protections set forth in *Wolff,* because the sanction of 30 days of disciplinary confinement did not implicate a liberty interest, the infraction did not violate the inmate's due process rights. "As long as the conditions or degree of confinement to which [a] prisoner is subjected is within the sentence imposed upon him and is not otherwise violative of the Constitution, the Due Process Clause does not by itself subject an inmate's treatment by prison authorities to judicial oversight." *Hewitt v. Helms*, 459

---

5  The right to appeal a disciplinary conviction is not one of the "narrow set of due process rights delineated in *Wolff.*" *Dickens v. Taylor,* 2006 WL 3190344, at *7 (D. Del. Nov. 3, 2006) (attached hereto as Exhibit D).

7

U.S. 460, 468 (1995) (citation omitted).

      Neither Delaware law nor Delaware Department of Correction regulations create a liberty interest in a prisoner's classification status within an institution. 11 *Del. C.* § 6529(e). *See also Carrigan v. State of Delaware*, 957 F. Supp. 1376 (D. Del. 1997). Thus, the transfer of an inmate from one classification to another is unprotected by the Due Process clause even where the change in status involves a significant alteration in the conditions of confinement. *Hewitt*, 459 U.S. at 468. In *Brown v. Cunningham,* 730 F. Supp. 612 (D. Del. 1990), the court held that an inmate's transfer from general population to administrative segregation, without being given notice and opportunity to challenge it, did not violate the inmate's liberty interests. In *Lott v. Arroyo*, 785 F. Supp. 508, 509 (E.D. Pa. 1991), the court held that an inmate transferred from a group home to a correctional facility had no constitutional right to participate in a work release program. It is also "well established that an inmate's expectation of keeping a specific prison job, or any job, does not implicate a property interest under the fourteenth amendment." *Grayson v. Stanton*, 2006 WL 694947, at *5 (D. Del. March 17, 2006) (attached hereto as Exhibit F). *See also James v. Quinlan*, 866 F.2d 627, 630 (3d Cir. 1989); *Abdul-Akbar v. Dep't of Correction*, 910 F. Supp. 986 (D. Del. 1995).

      In this case, pursuant to his 2000 sentence, Plaintiff spent several months at CVOP before bed space opened up at MCCC in June 2004. Shortly after arriving at MCCC, he was transferred for 14 days to SVOP as a sanction. Then, within the guidelines imposed by his sentence, he returned to CVOP to again await bed space. He remained at CVOP until he was transferred to a Level V facility in connection with a disciplinary action.

With respect to his time spent at CVOP and SVOP, Plaintiff points to no atypical or significant hardship "in relation to the ordinary incidents of prison life." The circumstance that he would have preferred to have been at MCCC does not implicate a liberty interest which would trigger the due process requirements set forth in *Wolff*. Thus, even if, as he claims, Plaintiff was not permitted to appear at the MDT meeting, there can be no due process violation by the alleged MDT members, Helen Moore and Stephen Devine.[6] Assuming that the SVOP defendants, Warden George, Michael Costello and Barbara Costello, in some way hampered Plaintiff's return to MCCC, they cannot be held liable because Plaintiff had no right to return to his status at work release. The same analysis applies to Warden Bianco and Michael Records: they cannot be held liable for preventing Plaintiff's transfer to MCCC. Plaintiff had no constitutionally protected interest in his confinement status and no constitutional right to participate in the work release program. Thus, his rights were not violated by his transfer to SVOP and then to CVOP.

Even construing the facts in a light most favorable to Plaintiff, there is no basis for holding Defendants[7] liable, and they are entitled to judgment as a matter of law.

## IV.  DEFENDANTS HAD NO PERSONAL INVOLVEMENT IN THE ALLEGED CONSTITUTIONAL VIOLATIONS.

The Third Circuit has held that a "defendant in a civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of *respondeat superior*." *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). *See also Monell v. Dep't of Social Servs.*, 436 U.S. 658 (1978). Personal involvement can be shown

---

[6] As noted herein, the Program Violation indicates that they were not on the MDT in question.
[7] The analysis set forth herein also applies to Commissioner Taylor.

through assertions of personal direction, or actual knowledge and acquiescence. *Rode*, 845 F.2d at 1207.

A supervisory public official may be held liable for a subordinate's constitutional tort only where the official was the "moving force" behind the violation or exhibited "deliberate indifference to the plight of the person deprived." *Sample v. Diecks*, 885 F.2d 1099, 1118 (3d Cir. 1989). *See also City of Canton v. Harris*, 489 U.S. 378, 391 (1989). To impose liability on an official for failure to adequately supervise or control the conduct giving rise to his claim, the plaintiff must demonstrate that: 1) an existing policy or practice created an unreasonable risk of Eighth Amendment injury; 2) the supervisor was aware that the unreasonable risk was created; 3) the supervisor was indifferent to that risk; and 4) the injury resulted from the policy or practice. The plaintiff must identify what the supervisory official failed to do that demonstrates his deliberate indifference and a close causal relationship between the identified deficiency and the ultimate injury. *Sample*, 885 F.2d at 1118.

In this case, Plaintiff fails to present allegations of personal involvement against Defendants Helen Moore, Stephen Devine, Michael Costello, Barbara Costello, Commissioner Taylor, Warden Bianco and Warden George.[8]

First, with respect to Defendants Helen Moore and Stephen Devine, there is no evidence that they participated in the MDT meeting at which Plaintiff's program violation was addressed.

Plaintiff has alleged no personal involvement by Defendants Michael Costello and Barbara Costello. Plaintiff conceded that he never spoke with Michael Costello. Exhibit B at 77.

---

8  He claims that he did speak with Michael Records regarding the fact that he had not been transferred to MCCC.

Plaintiff offers only his unsupported opinion that Michael Costello should have reviewed his case and realized that his sanction was improper. *Id.* at 76. Similarly, with respect to Barbara Costello, Plaintiff offers only the speculative comment that she should have "notified the proper authorities" with respect to his sanction. *Id.* at 78.

Finally, Plaintiff's allegations against Defendants Commissioner Taylor, Warden Bianco and Warden George are based solely on their roles as supervisors. He claims that Wardens Bianco and George should be held liable because they were responsible for the facilities and inmates. *Id.* at 75, 102. Plaintiff never spoke with or wrote to either Warden. *Id.* Without explanation, Plaintiff asserts that Commissioner Taylor should have had policies in place that would have prevented his sanction and ensured his return to work release. *Id.* at 104. He never spoke with or wrote to the Commissioner. *Id.*

With respect to Commissioner Taylor, and Wardens Bianco and George, Plaintiff's sole claims of liability are based on the doctrine of *respondeat superior*. There is no evidence that these Defendants were the moving force behind the alleged constitutional violations or that they were aware of Plaintiff's claims and remained deliberately indifferent to his situation.

Thus, Defendants Moore, Devine, Michael Costello, Barbara Costello, Commissioner Taylor, Warden Bianco and Warden George are entitled to judgment as a matter of law.

**V.    DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY IN THEIR INDIVIDUAL CAPACITIES.**

To determine whether a state official is entitled to qualified immunity, the court must conduct a two-part inquiry:

> A court required to rule upon the qualified immunity issue must consider, then, this threshold question: Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right? . . .
> If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity. On the other hand, if a violation could be made out on a favorable view of the parties' submissions, the next, sequential step is to ask whether the right was clearly established.

*Saucier v. Katz,* 533 U.S. 194, 201 (2001). To be clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton,* 483 U.S. 635, 640 (1987). "This inquiry, it is vital to note, must be undertaken in light of the specific context of the case, not as a broad general proposition." *Saucier,* 533 U.S. at 201.

As set forth herein, there was no constitutional right at issue. Plaintiff's change in custody status did not implicate a liberty interest, and therefore there could be no due process violation. Plaintiff had no right to participate in the work release program, and, therefore, his removal from the program did not violate his constitutional rights.

Thus, Defendants are entitled to qualified immunity as a matter of law and cannot be held liable to Plaintiff in their individual capacities.

      WHEREFORE, Defendants respectfully request that this Court grant summary judgment in their favor.

|  |  |
|---|---|
|  | STATE OF DELAWARE<br>DEPARTMENT OF JUSTICE<br><br>/s/ Eileen Kelly<br>Deputy Attorney General<br>Carvel State Building<br>820 N. French Street, 6th Floor<br>Wilmington, Delaware 19801<br>(302) 577-8400<br>eileen.kelly@state.de.us |
| Dated: November 27, 2006 | Attorney for Defendants |

**CERTIFICATE OF SERVICE**

I hereby certify that on November 27, 2006, I electronically filed *Defendants' Memorandum of Points And Authorities In Support of Their Motion for Summary Judgment* with the Clerk of Court using CM/ECF. I hereby certify that on November 27, 2006, I have mailed by United States Postal Service, the document to the following non-registered party: Kenneth Holland.

/s/ Eileen Kelly
Deputy Attorney General
Department of Justice
820 N. French St., 6th Floor
Wilmington, DE 19801
(302) 577-8400
eileen.kelly@state.de.us