Westlaw.

Not Reported in F.Supp.2d                                                                                                                Page 1

Not Reported in F.Supp.2d, 2006 WL 694947 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

Briefs and Other Related Documents
Grayson v. StantonD.Del.,2006.Only the Westlaw citation is currently available.
United States District Court,D. Delaware.
Willis L. GRAYSON, Jr., Plaintiff,
v.
Lieutenant James STANTON, Lieutenant Larry Savage, Anthony J. Rendina, Staff Lieutenant Ronald McCarty, and Staff Lieutenant B. Williams, Defendants.
No. Civ. 04-824-KAJ.

March 17, 2006.

Willis L. Grayson, Jr., Smyrna, DE, pro se.

MEMORANDUM ORDER
JORDAN, J.
*1 Willis L. Grayson, Jr. ("Grayson") brings this civil rights action pursuant to 42 U.S.C. § 1983. He appears *pro se* and on July 14, 2004, was granted *in forma pauperis* status pursuant to 28 U.S.C. § 1915. (D.I.5.) Grayson filed a mixed complaint seeking habeas corpus relief as well as relief for alleged constitutional violations. On January 26, 2006, he was ordered to advise the Court, within thirty days, how he intended to proceed with the claims. (D.I.18.) On February 24, 2006, Grayson sought additional time to comply with the Court's order due to his recent cancer diagnosis. (D.I.20.) I will grant the motion for enlargement of time.

On March 13, 2006, Grayson advised the Court that he wishes to proceed solely on his § 1983 claims. [FN1] (D.I.22.) I now proceed to review and screen the complaint pursuant to 28 U.S.C. § 1915 and § 1915A.

   FN1. Grayson was advised by Counselor Leona Minor that none of his meritorious and/or earned good time was forfeited. (D.I.22.)

For the reasons discussed below, I am dismissing the complaint without prejudice as legally and factually frivolous pursuant to 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b)(1).

I. THE COMPLAINT

Grayson filed a motion to amend the complaint pursuant to Fed.R.Civ.P. 15(a) to add that the defendants are sued in their official and individual capacities and to seek compensatory damages from each named defendant in the amount of $60.00 and punitive damages from each named defendant in the amount of $180.00. (D.I.19.) I will grant the motion.

Grayson brings this case pursuant to 42 U.S.C. § 1983. The allegations in the complaint stem from three separate disciplinary actions, all resulting in findings of guilt. The first infraction occurred on July 18, 2002; the second occurred on October 27, 2003; and the third occurred on April 10, 2004. [FN2] Grayson alleges that during the hearings and appeals for each of the infractions he was denied his right to due process. Suit is brought against the correction officers who issued him the disciplinary tickets, Lieutenant James Stanton ("Stanton") and Staff Lieutenant Ronald McCarty ("McCarty"), the hearing officers who oversaw the disciplinary hearings, Lieutenant Larry Savage ("Savage") and Staff Lieutenant B. Williams ("Williams), and the appeal board designee Anthony J. Rendina ("Rendina").

   FN2. As a result of the July 2002 infraction, Grayson was sanctioned with loss of 10 days good time credits. He did not indicate what type of sanction he received for the October 2002 infraction. The April 2004 infraction resulted in 10 days of loss of all privileges. Grayson

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                          Page 2
Not Reported in F.Supp.2d, 2006 WL 694947 (D.Del.)
(Cite as: Not Reported in F.Supp.2d)

subsequently advised the Court that none of his meritorious or good time credits were forfeited, paving the way for a pure § 1983 claim. (D.I.22.)

The first infraction occurred on July 18, 2002, as a result of Grayson allegedly being directed by Sgt. Cain to do one thing and Stanton directing him to do something else. Grayson alleges that Sgt. Cain instructed him to follow his order before following Stanton's directive. Stanton then issued Grayson an infraction for failure to obey an order, disorderly behavior, and inmate demonstration, and listed Sgt. Cain as a witness. Grayson alleges that write-up by Stanton was false. Grayson alleges that when he received written notice of the infraction, Staff Lieutenant Bruce Burton refused to place Sgt. Cain's name on the form # 127 with Grayson's other witnesses.

The hearing was held on July 24, 2002, and conducted by hearing officer Savage. Grayson alleges that the hearing was continued due to his right to confront his accuser, Stanton. Grayson also requested that Sgt. Cain be allowed to testify on his behalf. He alleges that Savage indicated that Grayson had a right to call Sgt. Cain as a witness, but that it was "too late".

*2 Grayson alleges that it was sixty-six days before the hearing was resumed on September 30, 2002. Stanton was present at the hearing. Grayson alleges that although there was sufficient time to notify and arrange for Sgt. Cain to give testimony on his behalf, Sgt. Cain was not allowed to testify. Grayson alleges that this violated his right to due process, as did the fact that he was not given a copy of Sgt. Cain's written statement of the July 18, 2002, events. He also alleges that Savage violated his right to due process by not giving him a verbal or written reason why he could not have a copy of the written statement.

Grayson was found guilty of the infractions and appealed the matter to the Office of the Bureau Chief of Prisons. Rendina reversed the finding of guilt on the inmate demonstration and upheld the remaining findings. Sgt. Cain submitted a memo dated October 2, 2003, that stated his incident report differed considerably from Stanton's report.[FN3] Grayson alleges that Rendina violated his right to due process when he relied solely on Stanton's falsified incident report and deliberately and intentionally ignored and/or refused to review Sgt. Cain's incident report. Grayson alleges that the disciplinary action caused his security status to be raised from minimum to medium-high, he was removed from minimum security housing, and he lost a prison job he had held for nearly five years.

> FN3. Sgt. Cain's memo is dated 2003, not 2002, but does refer to the July 18, 2002, incident. Because of the discrepancy of the dates it is unclear if the appeal board had the memo available to it or if the memo was submitted at a later time. (D.I.2, Ex. 8).

The second incident occurred on October 27, 2003. On that date, Grayson received a disciplinary report for failing to obey an order and for possession of non-dangerous contraband, written up by corrections officer Bobbi Montgomery ("Montgomery"). Grayson alleges that Montgomery deliberately failed to state that the contraband items were found in Grayson's trash bag.

Savage conducted the disciplinary hearing on December 9, 2003, thirty-one days after the write-up was received by Grayson. Grayson alleges that the hearing was not held in the proper area, in violation of the DCC's standard operating procedures. He also alleges that his right to due process was violated when he was not allowed to present evidence in his defense because Savage refused to allow him to retrieve a written statement from his former cellmate. Grayson alleges that Savage relied solely upon Montgomery's write-up in finding him guilty. Finally, Grayson alleges that Savage was not an impartial hearing officer, he violated internal prison rules, and he violated Grayson's constitutional rights.

Grayson appealed the matter and Rendina affirmed the decision. Grayson alleges that Rendina violated his right to due process according to DOC or BOP rules, because Savage violated his right to due process yet Rendina sustained the decision.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                          Page 3

Not Reported in F.Supp.2d, 2006 WL 694947 (D.Del.)
(Cite as: Not Reported in F.Supp.2d)

The next incident occurred on April 10, 2004, when McCarty was patting down Grayson. Grayson alleges that he was laughing, and that McCarty then took his ID card. The next day, Grayson alleges that he was taken to the Sergeant's office in the housing unit and given a copy of a write-up prepared by McCarty charging him with disorderly and threatening conduct and failure to obey a direct order. Grayson alleges that the write-up contains false information, is malicious, and will have an imminent impact upon the quality of his prison life.

*3 A hearing was held before hearing officer Williams. The charges were read and Grayson alleges that he asked to see the evidence and was told by Williams that "it was disposed of." Grayson alleges that he was told by Williams that McCarty's word was good enough to sustain the allegations. Grayson alleges that he was denied his right to counsel, his right to face his accuser, and the right to call witnesses on his behalf. He further alleges that the "No" box was marked on the form 127 prior to the time that he received it, and when he protested, Grayson was told that if he did not sign the form he would receive a write-up for failing to obey an order. He also alleges that he did not receive his "jail house Miranda" warning.

Grayson was found guilty, and he appealed the decision. In his appeal Grayson included three signed affidavits from witnesses he would have called at the hearing, had he been given the opportunity. Rendina reversed the disorderly/threatening charge and affirmed the failure-to-obey decision.

Grayson alleges that all the defendants violated his right to the disciplinary process, his constitutional protected liberty interest right, his Fourteenth Amendment right to due process, and his right to equal protection. Grayson alleges that the acts of the defendants will cause him the loss of security classification points and, in turn, his qualify of prison life will be seriously affected to the point of his being unjustly housed in units for incorrigible inmates. Grayson also raises a supplemental state claim for violation of the Delaware Constitution.

As relief, Grayson asks that his classification level be returned to its original level of six; that he be returned to his former classification status and housing unit; that the Court make a finding that the named defendants violated his constitutional rights; that an injunction issue vacating the decisions of the hearing officers and appeal board officials; that the disciplinary actions be expunged from his record; that he be reclassified from a medium high to minimum security level; that he be restored all rights and privileges including his job; and that he be awarded compensatory and punitive damages.

II. STANDARD OF REVIEW

When a litigant proceeds *in forma pauperis,* 28 U.S.C. § 1915 provides for dismissal under certain circumstances. When a prisoner seeks redress from a government defendant in a civil action, 28 U.S.C. § 1915A provides for screening of the complaint by the court. Both 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b)(1) provide that the court may dismiss a complaint, at any time, if the action is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant immune from such relief.

*Pro se* complaints are liberally construed in favor of the plaintiff. *Haines v. Kerner,* 404 U.S. 519, 520-521, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972). The court must "accept as true factual allegations in the complaint and all reasonable inferences that can be drawn therefrom." *Nami v. Fauver,* 82 F.3d 63, 65 (3d Cir.1996) (citing *Holder v. City of Allentown,* 987 F.2d 188, 194 (3d Cir.1993)). An action is frivolous if it "lacks an arguable basis either in law or in fact," *Neitzke v. Williams,* 490 U.S. 319, 325, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989), and the claims "are of little or no weight, value, or importance, not worthy of serious consideration, or trivial." *Deutsch v. United States,* 67 F.3d 1080, 1083 (3d Cir.1995). Additionally, a *pro se* complaint can only be dismissed for failure to state a claim when "it appears 'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Haines v. Kerner,* 404 U.S. 519, 520-521, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972) (quoting *Conley v. Gibson,* 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)).

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

...

Not Reported in F.Supp.2d    Page 4

Not Reported in F.Supp.2d, 2006 WL 694947 (D.Del.)
(Cite as: Not Reported in F.Supp.2d)

### III. ANALYSIS

*4 Grayson alleges a number of due process violations ranging from the right to confront his accuser, the right to present witnesses and evidence, the failure to have a hearing held within the requisite time period, and the failure to have an impartial hearing officer. In *Wolff v. McDonnell*, 418 U.S. 539, 556, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974), the Supreme Court held that prisoners must be accorded due process before prison authorities may deprive them of state created liberty interests. A prison disciplinary hearing satisfies the Due Process Clause if the inmate is provided with: (1) written notice of the charges and not less than 24 hours to marshal the facts and prepare a defense for an appearance at the disciplinary hearing; (2) a written statement by the fact finder as to the evidence relied on and the reasons for the disciplinary action; and (3) an opportunity "to call witnesses and present documentary evidence in his defense when to do so will not be unduly hazardous to institutional safety or correctional goals." *Wolff*, 418 U.S. at 563-71; *Griffin v. Spratt*, 969 F.2d 16, 19-20 (3d Cir.1992). Inmates do not have an absolute, constitutionally-protected right to confront and cross-examine witnesses at their prison disciplinary hearings. *Id.* at 567-68. *See also Baxter v. Palmigiano*, 425 U.S. 308, 321-22, 96 S.Ct. 1551, 47 L.Ed.2d 810 (1976); *Young v. Kann*, 926 F.2d 1396, 1404 (3d Cir.1991). Moreover, to be entitled to procedural due process protections as set forth in *Wolff*, a prisoner must have been deprived of a liberty interest. *See Wolff*, 418 U.S. at 557-558.

The Due Process Clause itself confers no liberty interest in freedom from state action taken "within the sentence imposed." *Sandin v. Conner*, 515 U.S. 472, 480, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995) (quoting *Hewitt v. Helms*, 459 U.S. 460, 468, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983)). State created liberty interests protected by the Due Process Clause are generally limited to restraints on prisoners that impose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Griffin v. Vaughn*, 112 F.3d 703, 706 (3d Cir.1997) (quoting *Sandin*, 515 U.S. at 484). The Third Circuit has held that a state prisoner's confinement in administrative segregation for 15 months did not impose an atypical and significant hardship on the prisoner. *Griffin*, 112 F.3d at 706-09; *see Sack v. Canino*, No. Civ. A. 95-1412, 1995 WL 498709, *1 (E.D.Pa. Aug.21, 1995) (assuming that the plaintiff was not afforded the protections called for by *Wolff*, because the sanction of 30 days disciplinary confinement did not implicate a liberty interest, such infraction did not violate the plaintiff's due process rights). Also, neither Delaware law nor DCC regulations create a liberty interest in a prisoner's classification within an institution. *See* Del.Code Ann 11, § 6529(e). " ' As long as the conditions or degree of confinement to which [a] prisoner is subjected is within the sentence imposed upon him and is not otherwise violative of the Constitution, the Due Process Clause does not in itself subject an inmate's treatment by prison authorities to judicial oversight." ' *Hewitt*, 459 U.S. at 468 (quoting *Montanye v. Haymes*, 427 U.S. 236, 242, 96 S.Ct. 2543, 49 L.Ed.2d 466 (1976)).

*5 It has thus been determined that the transfer of a prisoner from one classification to another is unprotected by " 'the Due Process Clause in and of itself," ' even though the change in status involves a significant modification in conditions of confinement. *Hewitt*, 459 U.S. at 468 (citation omitted); *Moody v. Daggett*, 429 U.S. 78, 97 S.Ct. 274, 50 L.Ed.2d 236 (1976); *see also Lott v. Arroyo*, 785 F.Supp. 508, 509 (E.D.Pa.1991) (plaintiff transferred from group home to correctional facility had no constitutionally enforceable right to participate in work release program); *Brown v. Cunningham*, 730 F.Supp. 612 (D.Del.1990) (plaintiff's transfer from general population to administrative segregation, without being given notice and opportunity to challenge it, was not violation of plaintiff's liberty interest). Finally, it well established that an inmate's expectation of keeping a specific prison job, or any job, does not implicate a property interest under the fourteenth amendment. *James v. Quinlan*, 866 F.2d 627, 630 (3d Cir.1989); *see also Brian v. Werner*, 516 F.2d 233, 240 (3d Cir.1975) (inmates expectation of keeping job is not a property interest entitled to due process protection).

As Grayson has not articulated a protected liberty

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                 Page 5
Not Reported in F.Supp.2d, 2006 WL 694947 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

interest with respect to his discipline, confinement, loss of job, and loss of privileges, his due process claims are dismissed for failure to state a claim upon which relief may be granted, pursuant to 28 U.S.C. § 1915(e)(2)(B)(I) and § 1915A(b)(1). Amendment of the complaint would be futile. *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 111 (3d Cir.2002); *Borelli v. City of Reading*, 532 F.2d 950, 951-52 (3d. Cir.1976). Because the complaint fails to state a federal claim, the court declines to exercise jurisdiction over Grayson's supplemental state law claims. 28 U.S.C. § 1367; *De Asencio v. Tyson Foods, Inc.*, 342 F.3d 301, 309 (3d Cir.2003).

## IV. CONCLUSION

IT IS THEREFORE ORDERED as follows:

1. The motion to amend and/or supplement pleadings (D.I.19) is GRANTED.

2. The motion for enlargement is time (D.I.20) is GRANTED.

3. The complaint is DISMISSED without prejudice as legally and factually frivolous pursuant to 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b)(1). Amendment of the complaint would be futile, and the Court declines to exercise supplemental jurisdiction over the state law claims.

D.Del.,2006.
Grayson v. Stanton
Not Reported in F.Supp.2d, 2006 WL 694947 (D.Del.)

Briefs and Other Related Documents (Back to top)

• 1:04cv00824 (Docket) (Jul. 06, 2004)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.