IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| KENNETH L. HOLLAND, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )     C. A. No. 05-464-SLR |
| | )     JURY TRIAL DEMANDED |
| STANLEY TAYLOR, et al., | ) |
| | ) |
| Defendants. | ) |

**DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF THEIR RENEWED MOTION FOR SUMMARY JUDGMENT**

STATEMENT OF FACTS

1. This prisoner civil rights action was filed by the *pro se* plaintiff Kenneth L. Holland ("Plaintiff") on March 30, 2004 pursuant to 42 *U.S.C.* § 1983. [D.I. 2]. Plaintiff named as defendants Stanley Taylor, Vincent Bianco, Michael Records, Bob George, Michael Costello, Barbara Costello, the Department of Correction, Stephen Devine, Helen Moore and Adam Bramble[1] ("Defendants"). On or about October 23, 2006, the Plaintiff amended his Complaint to add Kent Raymond, Wilbur Justice and Theresa DeMarco as Defendants. [D.I. #50]. Plaintiff's claims against Defendants are based on the following allegations.

2. In June 2000, Plaintiff was sentenced for a number of offenses. *See* Sentence Order attached hereto as Exhibit A. The Sentence Order included a one year sentence at Supervision Level IV Work Release, when bed space became available. *Id.* After serving another sentence, Plaintiff arrived at Central Violation of Probation Center ("CVOP") in March,

---

[1] Defendant Adam Bramble is not included as a movant in this Motion for Summary Judgment.

2004, awaiting bed space at Morris Community Correctional Center ("MCCC"),[2] which is a work release program. [D.I. 2]. *See* Holland Transcript attached hereto as Exhibit B at 53-54.

3.  Plaintiff was transferred to MCCC in June 2004. [D.I. 2]. On June 27, 2004, he was involved in a dispute with a correctional officer at MCCC and received a program violation. The Multi-Disciplinary Team ("MTD") met on Tuesday, June 29th to review the Plaintiff's program violation. Plaintiff claims that he was not present at the hearing although he had asked to be present. He was sanctioned to serve 14 days at the Sussex Violation of Probation Center ("SVOP"). After serving the 14 days, he was to be transferred to CVOP to await bed space back at MCCC. *Id. See also* Program Violation attached hereto as Exhibit C.

4.  Plaintiff arrived at SVOP on July 1, 2004. [D.I. 2]. He claims that he wanted to file a written appeal of the sanction, but did not have access to writing supplies. He alleges he asked unspecified individuals at SVOP for supplies, and was told that he need to fill out a "pay to" and wait to receive supplies from the mail room. Plaintiff asserts that due to this policy, he was prevented from filing his appeal within a 72 hour deadline. *Id.* It is undisputed that he never appealed the sanction in question. *See* Exhibit B at 75.

5.  On July 14, 2004, Plaintiff arrived at CVOP. [D.I. 2]. Plaintiff complains that he remained at CVOP and was never transferred back to a work release program, although he repeatedly asked to be transferred. On November 26, 2004, while at CVOP, Plaintiff became involved in an altercation with Defendant Adam Bramble, with the result that Plaintiff was transferred to Delaware Correctional Center, a Level V facility. *Id.*

6.  Plaintiff has asserted a number of claims against Defendants based on these factual allegations. First, he alleges that the MDT members' failure to permit him to be present

---
[2] MCCC is referred to as MCI in the Complaint.

at their meeting on his program violation constituted deliberate indifference and due process and equal protection violations. The MDT members also sanctioned Plaintiff "outside guidelines" and failed to provide him with a fair and timely appeal process. At first, Plaintiff alleged that the MDT members were Bill Etto,[3] Helen Moore and Steven Devine. [D.I. 2]. *See* Exhibit B at 59. However, through discovery, the Plaintiff learned that Kent Raymond, Wilbur Justice and Theresa DeMarco comprised the MDT. The Plaintiff subsequently amended his Complaint adding these three Defendants. [D.I.#50]. Only Defendant Raymond remains as a Defendant; Defendants Justice and DeMarco were dismissed on April 4, 2008, for failure to effect service of process. [D.I.#85].

7. Plaintiff also claims that staff at SVOP prevented him from filing a timely appeal of his sanction due to their policy regarding mailing supplies. [D.I. 2]. He also suggests that SVOP staff should have realized that he had been sanctioned improperly and should not have been at SVOP. *See* Exhibit B at 76-78. Defendant Bob George is the Warden at SVOP. Plaintiff testified that he sued Warden George because he oversaw departments and individuals at the facility and was responsible for ensuring that all "requirements" were met. *Id.* at 75.

8. Defendant Michael Costello is the Security Supervisor at SVOP. [D.I. 33]. Plaintiff asserts that Michael Costello should have reviewed Plaintiff's case when Plaintiff arrived at SVOP. Exhibit B at 76. Defendant Barbara Costello is a Transfer Officer at SVOP. [D.I. 33]. Plaintiff alleges that she should have realized that there was a "discrepancy" in Plaintiff's sanction and notified the proper authorities. Exhibit B at 78.

---

[3] Bill Etto was not served with the Complaint. The program violation indicates that Moore and Devine were not on the MDT that heard the program violation.. *See* Exhibit C.

9.      Plaintiff claims that, when he returned to CVOP to await bed space at MCCC (work release), staff there either prevented or did not assist in his transfer. *Id.* at 96-97. With respect to this claim, Plaintiff sued Cindy Scala, a counselor at CVOP, who was never served with the Complaint.4  He also named Michael Records, a Probation and Parole Supervisor at CVOP, as a defendant. [D.I. 33]. Plaintiff testified that he spoke with Michael Records regarding his concerns. Exhibit B at 96-97. Plaintiff asserts that he was "unlawfully imprisoned" at CVOP because he was not returned to the work release program, and that bed space should have been held for him there. *Id.* at 68, 96.

10.     Finally, Plaintiff has named as defendants Vincent Bianco, Warden of MCCC and CVOP, and Stanley Taylor, Commissioner of the Department of Correction. As to Warden Bianco, Plaintiff's claim against him is based on allegations that he is responsible for all inmates at MCCC and CVOP. *Id.* at 102. As to Commissioner Taylor, Plaintiff claims that he was responsible for having policies in place that would have prevented the sanction in question and ensured Plaintiff's return to his "original status." *Id.* at 104.

## MEMORANDUM OF LAW

The Court shall grant a motion for summary judgment if "there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue is genuine if the jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The burden of proof is on the moving party to demonstrate the absence of material issues of fact, and inferences drawn from the facts must be viewed in the light most favorable to the nonmoving party. However, once the

---

4    Cindy Scala was dismissed from this lawsuit on April 4, 2008, for failure to effect service of process. [D.I.#85].

4

moving party advances evidence in support of its contentions, the nonmoving party must go beyond the pleadings and introduce affidavits and other evidence that will create a genuine issue of fact in order to avoid summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

There is no genuine issue of material fact as to the liability of Defendants in their official and individual capacities and, therefore, they are entitled to judgment as a matter of law.

## I. UNDER THE ELEVENTH AMENDMENT, DEFENDANTS CANNOT BE HELD LIABLE IN THEIR OFFICIAL CAPACITIES.

"[I]n the absence of consent, a suit [in federal court] in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment." *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984). This preclusion extends to state officials when "the state is the real, substantial party in interest." *Id.* at 101 (*quoting Ford Motor Co. v. Dep't of Treasury*, 323 U.S. 459, 464 (1945)). "Relief sought nominally against an [official] is in fact against the sovereign if the decree would operate against the latter." *Id.* (*quoting Hawaii v. Gordon*, 373 U.S. 57, 58 (1963)). A State may waive its Eleventh Amendment immunity. However, such waiver must constitute an "unequivocal indication that the State intends to consent to federal jurisdiction that otherwise would be barred by the Eleventh Amendment." *Ospina v. Dep't of Corrections*, 749 F. Supp. 572, 578 (D. Del. 1990) (*quoting Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 238 n.1 (1985)).

In this case, the State of Delaware has neither consented to Plaintiff's suit nor waived its immunity. Therefore, under the Eleventh Amendment, Defendants cannot be held liable in their official capacities.

## II. THE DEPARTMENT OF CORRECTION CANNOT BE HELD LIABLE BECAUSE IT IS NOT A PERSON WITHIN THE MEANING OF 42 *U.S.C.* § 1983.

5

To state a claim under 42 *U.S.C.* § 1983, Plaintiff must allege the violation of a right secured by the Constitution or laws of the United States and must show that the violation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988).

Plaintiff has named the Delaware Department of Correction as a defendant in this action. The Department of Correction is an agency of the State of Delaware. *See Green v. Howard R. Young Correctional Inst.*, 229 F.R.D. 99, 102 (D. Del. 2005). Consequently, the Department of Correction is not a "person" within the meaning of 42 *U.S.C.* § 1983. *Id. See also Ospina*, 749 F. Supp. at 577.

Because the Department of Correction is not a "person" within the meaning of Section 1983, it cannot be held liable to Plaintiff and is entitled to judgment as a matter of law.

### III.  DEFENDANTS ARE ENTITLED TO JUDGMENT BECAUSE PLAINTIFF HAD NO CONSTITUTIONAL RIGHT TO PARTICIPATE IN THE WORK RELEASE PROGRAM.

Plaintiff's claims against Defendants are based on his assertion the he had a constitutional right to participate in the work release program at MCCC. (Complaint, *passim*). According to Plaintiff, the MDT members violated his rights by failing to allow him to participate in the hearing on his program violation and by improperly sanctioning him to time at SVOP without providing for his immediate return to MCCC. The staff at SVOP allegedly prevented his timely appeal of the sanction and did not review his case, with the result that the improper sanction was not remedied and he was not returned to MCCC. Staff at CVOP improperly prevented his transfer to MCCC.

Plaintiff's claim that he had a right to participate in the work release program is not supported by the law. Therefore, Defendants are entitled to summary judgment.

Inmates are entitled to certain due process protections in prison disciplinary hearings. *Wolf v. McDonnell,* 418 U.S. 539, 563-71 (1974).[5] However, an inmate is entitled to those due process protections only where there has been a deprivation of a liberty interest. *Id.* at 557-558. The Due Process clause confers no liberty interest in freedom from state action which is taken "within the sentence imposed." *Sandin v. Conner*, 515 U.S. 472, 480 (1995). In general, state created liberty interests protected by the Due Process clause are limited to restraints on inmates that impose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Griffin v. Vaughn,* 112 F.3d 703, 706 (3d Cir. 1997) (*quoting Sandin*, 515 U.S. at 484).

The Third Circuit has held that an inmate's confinement in administrative segregation for 15 months did not impose an atypical and significant hardship. *Griffin,* 112 F.3d at 706-709. In *Sack v. Cancino*, 1995 WL 498709, at *1 (E.D. Pa. Aug. 21, 1995) (attached hereto as Exhibit E), the court held that, assuming that plaintiff was not given the protections set forth in *Wolff,* because the sanction of 30 days of disciplinary confinement did not implicate a liberty interest, the infraction did not violate the inmate's due process rights. "As long as the conditions or degree of confinement to which [a] prisoner is subjected is within the sentence imposed upon him and is not otherwise violative of the Constitution, the Due Process Clause does not by itself subject an inmate's treatment by prison authorities to judicial oversight." *Hewitt v. Helms*, 459 U.S. 460, 468 (1995) (citation omitted).

Neither Delaware law nor Delaware Department of Correction regulations create a liberty interest in a prisoner's classification status within an institution. 11 *Del. C.* § 6529(e). *See also*

---

5  The right to appeal a disciplinary conviction is not one of the "narrow set of due process rights delineated in *Wolff."  Dickens v. Taylor,* 2006 WL 3190344, at *7 (D. Del. Nov. 3, 2006) (attached hereto as Exhibit D).

*Carrigan v. State of Delaware*, 957 F. Supp. 1376 (D. Del. 1997). Thus, the transfer of an inmate from one classification to another is unprotected by the Due Process clause even where the change in status involves a significant alteration in the conditions of confinement. *Hewitt,* 459 U.S. at 468. In *Brown v. Cunningham,* 730 F. Supp. 612 (D. Del. 1990), the court held that an inmate's transfer from general population to administrative segregation, without being given notice and opportunity to challenge it, did not violate the inmate's liberty interests. In *Lott v. Arroyo*, 785 F. Supp. 508, 509 (E.D. Pa. 1991), the court held that an inmate transferred from a group home to a correctional facility had no constitutional right to participate in a work release program. It is also "well established that an inmate's expectation of keeping a specific prison job, or any job, does not implicate a property interest under the fourteenth amendment." *Grayson v. Stanton*, 2006 WL 694947, at *5 (D. Del. March 17, 2006) (attached hereto as Exhibit F). *See also James v. Quinlan*, 866 F.2d 627, 630 (3d Cir. 1989); *Abdul-Akbar v. Dep't of Correction*, 910 F. Supp. 986 (D. Del. 1995).

Pursuant to his 2000 sentence, Plaintiff spent several months at CVOP before bed space opened up at MCCC around June 17, 2004. (See Affidavit of Kent Raymond attached hereto at Exh. G.). Within ten days of his arrival, on June 27th the Plaintiff was written up for a program violation of disorderly and threatening behavior. *Id.* The Plaintiff indicated on the program violation form that he wanted to attend the Multi-Disciplinary Team ("MDT") hearing when it reviewed his violation. *Id.* However, two days later on Tuesday, June 29th the day of the hearing Plaintiff went to work and missed his hearing. *Id.*

Every incoming resident at the MCCC is given an orientation manual explaining the rules and regulations of the facility. *Id.* In addition to the rules and regulations, the manual also

provides information on mail services, furloughs, treatment programs, employment services, and visits. *Id.* The Plaintiff signed the form acknowledging receipt of the manual on June 22, 2004. *Id* The manual clearly states that the MDT usually meets on Tuesdays to review residents' program violations. *Id.* The Plaintiff would and should have been aware of the Tuesday hearings had he read the MCCC's orientation manual. *Id.* If the resident wishes to attend his hearing, he must do so when they are scheduled. *Id.* As previously stated, the Plaintiff chose to go to work the day of the hearing; therefore, he can only blame himself for his absence from the hearing.

On July 1, 2004, the Plaintiff was transferred to SVOP to serve his fourteen day sanction. Plaintiff claims that when he arrived at SVOP he had no means to appeal the MDT's decision as he had no writing or mailing supplies. Moreover, Plaintiff believed he only had a 72 hour period in which to file an appeal. In this case, Plaintiff's lack of supplies and time played no part in his attempt to appeal, as decisions by the MDT are final, there is no appeal process. ( Exh. G, ¶6 ). Defendant Raymond cannot be held liable for Plaintiff's transfer to SVOP. Plaintiff's own behavior resulted in his transfer from work release to SVOP.

Then, within the guidelines imposed by his sentence, the Plaintiff finished his fourteen day sanction at SVOP and returned to CVOP again to await bed space. He remained at CVOP until he was transferred to a Level V facility in connection with a disciplinary action. With respect to his time spent at CVOP and SVOP, Plaintiff points to no atypical or significant hardship "in relation to the ordinary incidents of prison life."

As previously stated, Plaintiff has no liberty interest in remaining in any particular housing unit, institution or work release. The privations described by Plaintiff in his Complaint are not the type that pose an "atypical and significant hardship." *Sandin*, 515 U.S. at 483-84.

The circumstance that he would have preferred to have been at MCCC does not implicate a liberty interest which would trigger the due process requirements set forth in *Wolff*. Therefore, Plaintiff's allegations against the Defendants should be dismissed.

Assuming that the SVOP defendants, Warden George, Michael Costello and Barbara Costello, in some way hampered Plaintiff's return to MCCC, they cannot be held liable because Plaintiff had no right to return to his status at work release. The same analysis applies to Warden Bianco and Michael Records: they cannot be held liable for preventing Plaintiff's transfer to MCCC. Plaintiff had no constitutionally protected interest in his confinement status and no constitutional right to participate in the work release program. Thus, his rights were not violated by his transfer to SVOP and then to CVOP.

Even construing the facts in a light most favorable to Plaintiff, there is no basis for holding Defendants[6] liable, and they are entitled to judgment as a matter of law.

### IV. DEFENDANTS HAD NO PERSONAL INVOLVEMENT IN THE ALLEGED CONSTITUTIONAL VIOLATIONS.

The Third Circuit has held that a "defendant in a civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of *respondeat superior*." *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). *See also Monell v. Dep't of Social Servs.*, 436 U.S. 658 (1978). Personal involvement can be shown through assertions of personal direction, or actual knowledge and acquiescence. *Rode*, 845 F.2d at 1207.

A supervisory public official may be held liable for a subordinate's constitutional tort only where the official was the "moving force" behind the violation or exhibited "deliberate

---

[6] The analysis set forth herein also applies to Commissioner Taylor.

indifference to the plight of the person deprived." *Sample v. Diecks*, 885 F.2d 1099, 1118 (3d Cir. 1989). *See also City of Canton v. Harris*, 489 U.S. 378, 391 (1989). To impose liability on an official for failure to adequately supervise or control the conduct giving rise to his claim, the plaintiff must demonstrate that: 1) an existing policy or practice created an unreasonable risk of Eighth Amendment injury; 2) the supervisor was aware that the unreasonable risk was created; 3) the supervisor was indifferent to that risk; and 4) the injury resulted from the policy or practice. The plaintiff must identify what the supervisory official failed to do that demonstrates his deliberate indifference and a close causal relationship between the identified deficiency and the ultimate injury. *Sample*, 885 F.2d at 1118.

In this case, Plaintiff fails to present allegations of personal involvement against Defendants Michael Costello, Barbara Costello, Commissioner Taylor, Warden Bianco and Warden George.[7]

Defendant Kent Raymond was one of the members who participated in Plaintiff's MDT hearing. (Exh. G). However, it was Plaintiff's own actions, his decision to go to work on the day of the hearing that prevented him from attending his hearing. Defendant Raymond played no part in Plaintiff's absence from the hearing and therefore had no personal involvement.

Plaintiff has alleged no personal involvement by Defendants Michael Costello and Barbara Costello. Plaintiff conceded that he never spoke with Michael Costello. Exhibit B at 77.

Plaintiff offers only his unsupported opinion that Michael Costello should have reviewed his case and realized that his sanction was improper. *Id.* at 76. Similarly, with respect to Barbara Costello, Plaintiff offers only the speculative comment that she should have "notified the

---

7 He claims that he did speak with Michael Records regarding the fact that he had not been transferred to MCCC.

11

proper authorities" with respect to his sanction. *Id.* at 78.

Finally, Plaintiff's allegations against Defendants Commissioner Taylor, Warden Bianco and Warden George are based solely on their roles as supervisors. He claims that Wardens Bianco and George should be held liable because they were responsible for the facilities and inmates. *Id.* at 75, 102. Plaintiff never spoke with or wrote to either Warden. *Id.* Without explanation, Plaintiff asserts that Commissioner Taylor should have had policies in place that would have prevented his sanction and ensured his return to work release. *Id.* at 104. He never spoke with or wrote to the Commissioner. *Id.*

With respect to Commissioner Taylor, and Wardens Bianco and George, Plaintiff's sole claims of liability are based on the doctrine of *respondeat superior*. There is no evidence that these Defendants were the moving force behind the alleged constitutional violations or that they were aware of Plaintiff's claims and remained deliberately indifferent to his situation.

Thus, Defendants Raymond, Michael Costello, Barbara Costello, Commissioner Taylor, Warden Bianco and Warden George are entitled to judgment as a matter of law.

## V. DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY IN THEIR INDIVIDUAL CAPACITIES.

To determine whether a state official is entitled to qualified immunity, the court must conduct a two-part inquiry:

> A court required to rule upon the qualified immunity issue must consider, then, this threshold question: Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right? . . .
> If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity. On the other hand, if a violation could be made out on a favorable view of the parties' submissions, the next, sequential step is to ask whether the right was clearly established.

*Saucier v. Katz,* 533 U.S. 194, 201 (2001). To be clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton,* 483 U.S. 635, 640 (1987). "This inquiry, it is vital to note, must be undertaken in light of the specific context of the case, not as a broad general proposition." *Saucier,* 533 U.S. at 201.

As set forth herein, there was no constitutional right at issue. Plaintiff's change in custody status did not implicate a liberty interest, and therefore there could be no due process violation. Plaintiff had no right to participate in the work release program, and, therefore, his removal from the program did not violate his constitutional rights.

Thus, Defendants are entitled to qualified immunity as a matter of law and cannot be held liable to Plaintiff in their individual capacities.

WHEREFORE, Defendants respectfully request that this Court grant summary judgment in their favor.

STATE OF DELAWARE
DEPARTMENT OF JUSTICE

/s/ Catherine Damavandi
Catherine Damavandi, ID#3823
Deputy Attorney General
Carvel State Building
820 N. French Street, 6th Floor
Wilmington, Delaware 19801
(302) 577-8400
catherine.damavandi@state.de.us
Dated:   June 3, 2008                               Attorney for Defendants

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| KENNETH L. HOLLAND, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C. A. No. 05-464-SLR |
| | ) | JURY TRIAL DEMANDED |
| STANLEY TAYLOR, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## CERTIFICATE OF SERVICE

I hereby certify that on June 3, 2008, I electronically filed *Defendants' Memorandum of Points And Authorities In Support of Their Renewed Motion for Summary Judgment* with the Clerk of Court using CM/ECF. I further certify that on June 3, 2008, I caused the within document to be mailed to the following non-registered party by United States Postal Service:

> Kenneth Holland, Inmate
> SBI#164800
> Delaware Correctional Center
> 1181 Paddock Road
> Smyrna, DE 19977

> /s/ Catherine Damavandi
> Catherine Damavandi, ID#3823
> Deputy Attorney General
> Department of Justice
> 820 N. French St., 6th Floor
> Wilmington, DE 19801
> (302) 577-8400
> catherine.damavandi@state.de.us