IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| KENNETH L. HOLLAND<br><br>Plaintiff,<br><br>v.<br><br>STANLEY W. TAYLOR, JR., VINCENT BIANCO, ADAM BRAMBLE, MICHAEL RECORDS, LYNNE CLENDANIEL, ROBERT GEORGE, MICHAEL COSTELLO, BARBARA COSTELLO, DEPARTMENT OF CORRECTION, and KENT RAYMOND,<br><br>Defendants. | Civ. No. 05-464-SLR |

Kenneth L. Holland, Delaware Correctional Center, Smyrna, Delaware. Plaintiff, *pro se*.

Catherine Damavandi, Deputy Attorney General, State of Delaware, Wilmington, Delaware. Counsel for Defendants.

**MEMORANDUM OPINION**

Dated: March 26, 2009
Wilmington, Delaware

ROBINSON, District Judge

## I. INTRODUCTION

Plaintiff, Kenneth Holland, an inmate at Delaware Correctional Center,[1] Smyrna, Delaware, filed this civil rights action pursuant to 42 U.S.C. § 1983.[2] (D.I. 2) He appears *pro se* and has been granted leave to proceed *in forma pauperis*. (D.I. 1; D.I. 7) Plaintiff alleges violations of his constitutional rights to equal protection and due process, deliberate indifference, cruel and unusual punishment, and false imprisonment against defendants[3] Stanley W. Taylor, Jr. ("Taylor"), former Commissioner of the Department of Correction of the State of Delaware; Vincent Bianco ("Bianco"), Warden, Morris Community Correctional Center ("MCCC"); Michael Records ("Records"), Security Supervisor, Probation Officers, Central Violation of Probation Center ("CVOP"); Robert George ("George"), Warden, Sussex Violation of Probation Center ("SVOP"); Michael Costello, Probation and Parole Supervisor, CVOP; Barbara Costello, Transfer

---

[1] Now called the James T. Vaughn Correctional Center.

[2] "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

[3] Named in the original complaint, defendants Bill Etto, Helen Moore, and John Doe (later identified as Steven Devine), all alleged to be members of the Multi-Disciplinary Team ("MDT") of the Morris Community Correctional Center, were dismissed at the request of plaintiff after the correct identities of the MDT members were discovered to be Kent Raymond, Wilbur Justice, and Theresa Demarco. (D.I. 2; D.I. 50; D.I. 59) Wilbur Justice and Theresa Demarco, along with Cindy Scala, who had been named in the original complaint, were dismissed from this case on April 4, 2008 for failure to serve. (D.I. 85)

Officer, SVOP; Department of Correction ("DOC"); and Kent Raymond ("Raymond"), Counselor Supervisor and member of the MDT, MCCC.[4] (D.I. 2 ¶ 1-6, 8-11; D.I. 33 ¶¶ 5, 9; D.I. 50 ¶ 1; D.I. 59; D.I. 85) Before the court are plaintiff's motion to appoint counsel and defendants' renewed[5] motion for summary judgment on all claims as to defendants Taylor, Bianco, Records, George, Michael Costello, Barbara Costello, the DOC, and Raymond. (D.I. 5; D.I. 98; D.I. 99 n.1) The court has jurisdiction pursuant to 28 U.S.C. § 1331. For the following reasons, the court will grant defendants' motion for summary judgment as to all claims against the above named defendants and deny plaintiff's motion to appoint counsel.

## II. BACKGROUND

On June 13, 2000, plaintiff was convicted of attempted theft. (D.I. 99, ex. A) He was sentenced to two years incarceration ("Level V"), followed by one year at work release ("Level IV") when bed space became available. (*Id.*) After serving another sentence, defendant arrived at MCCC, a Level IV facility, on or about June 14, 2004. (D.I. 2 ¶ 2; *Id.* at ex. G ¶ 3) On June 22, 2004, plaintiff was given and signed for the MCCC Orientation Manual, which includes information on the policies and procedures at

---

[4]Defendants C/O Adam Bramble and Lynne Clendaniel (originally identified as "Cline Danials") are not parties to this motion for summary judgment. (D.I. 5; D.I. 98; D.I. 99 n.1; D.I. 107) Defendant Bramble filed a counterclaim on March 29, 2006 against plaintiff for injuries arising out of an alleged assault. (D.I. 33 ¶¶ 8-10) Plaintiff filed a motion for summary judgment as to defendant Bramble's counterclaim on March 13, 2009, approximately nine months after the June 2, 2008 deadline for all dispositive motions. (D.I. 84; D.I. 107) Plaintiff's basis for his summary judgment motion is that he was found "innocent at trial by jury" of the criminal charge "Assault in a Detention Facility." (D.I. 107 ¶¶ 1-2)

[5]Defendants' original motion was denied without prejudice to renew pursuant to the court's scheduling order of August 8, 2007 granting defendants' motion to extend discovery time. (D.I. 60; D.I. 61)

MCCC, including the fact that the MDT[6] meets on Tuesday mornings.  (D.I. 99, ex. G ¶ 5)

On June 28, 2004, defendant was involved in an incident[7] with a correctional officer at MCCC and received a program violation.  (D.I. 2 ¶¶ 7-13; *Id.* at ¶ 3)  Plaintiff signed the written program violation form and indicated that he wished to be present at MDT's review of the violation by checking the selection "I will appear for MDT."  (D.I. 2 ¶ 14; D.I. 55, ex. B; D.I. 99, ex. C)  On June 29, 2004, a Tuesday, the MDT met and reviewed plaintiff's program violation and sanctioned him to 14 days at SVOP, following which he would be transferred to CVOP to await bed space back at MCCC.  (D.I. 2 ¶¶ 17-18; D.I. 55, ex. B; D.I 99 ¶ 3)  Plaintiff was not present at the meeting, but rather had gone to work that morning at approximately 7:30 a.m.  (D.I. 2 ¶¶ 16-17; D.I. 99 ¶ 3)

In compliance with the 14 day sanction, plaintiff was transferred to SVOP on July 1, 2004.  (D.I. 2 ¶ 19)  Upon his arrival at SVOP, plaintiff received a copy of the SVOP Orientation Manual and a copy of his sanction.  (D.I. 49, ex. A; D.I. 99, ex. B at p. 17)  The back of the sanction form allegedly[8] had a space where an inmate could choose to

---

[6]The MDT is a board of three individuals that meets weekly to review items such as: "Program Violations, Requests to Drive, Special Requests, Weekly Phase List and Treatment Passes."  (D.I. 99, ex. G ¶ 5)

[7]Plaintiff was attempting to purchase food from the vending machines, located just outside the doors of his assigned housing unit, Block B, when he was ordered to return to Block B by C/O Nock.  (D.I. 2 ¶¶ 4-8)  As the plaintiff walked passed C/O Nock, he called the officer a derogatory name, the reason for the program violation.  (D.I. 2 ¶¶ 10-13)

[8]When deciding a motion for summary judgment, the court must "view the underlying facts and all reasonable inferences therefrom in the light most favorable to the party opposing the motion," *Pa. Coal Ass'n v. Babbitt*, 63 F.3d 231, 236 (3d Cir. 1995); for purposes of this motion, therefore, the court must accept this and other disputed assertions as true.

appeal the sanction. (D.I. 99, ex. B at p. 17) Plaintiff selected that box and wrote down the reasons for his appeal. (*Id.* at p. 19) In order to mail the appeal to MCCC, plaintiff began the process[9] of requesting mail supplies but aborted the attempt because he felt that he would not have received them prior to his subsequent transfer to CVOP. (*Id.*)

Plaintiff was transferred to CVOP on July 14, 2004 to await bed space at MCCC. (D.I. 2 ¶ 27; *Id.* at ¶¶ 4, 5) Shortly after his arrival at CVOP, he was placed on a waiting list to return to MCCC. (D.I. 2 ¶ 29) Plaintiff remained at CVOP until November 26, 2004, when he was involved in an incident with defendant Bramble and subsequently transferred to the Delaware Correctional Center. (*Id.* at ¶¶ 41-66; D.I. 99 ¶ 5)

## III. STANDARD OF REVIEW

A court shall grant summary judgment only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the burden of proving that no genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 n.10 (1986). When determining whether a genuine issue of material fact exists, the court must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *Wishkin v. Potter*, 476 F.3d 180, 184 (3d Cir. 2007).

---

[9]Inmates at SVOP requesting mail supplies must complete a "pay-to" form. (D.I. 49, ex. A) The record is unclear how long a "pay-to" request takes to process. (D.I. 48 ¶ 4; D.I. 99, ex. B at p. 19)

"Facts that could alter the outcome are 'material,' and disputes are 'genuine' if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct." *Horowitz v. Federal Kemper Life Assurance Co.*, 57 F.3d 300, 302 n.1 (3d Cir. 1995) (internal citations omitted).

If the moving party has demonstrated an absence of material fact, the nonmoving party then "must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita,* 475 U.S. at 587 (*quoting* Fed. R. Civ. P. 56(e)). However, a party opposing summary judgment "must present more than just 'bare assertions, conclusory allegations or suspicions' to show the existence of a genuine issue." *Podobnik v. United States Postal Serv.*, 409 F.3d 584, 594 (3d Cir. 2005) (*quoting Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). Indeed, to survive a motion for summary judgment, plaintiff cannot rely merely on the unsupported allegations of the complaint, and must present more than the "mere existence of a scintilla of evidence" in his favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). If the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

## IV. DISCUSSION

Construing plaintiff's complaint liberally,[10] plaintiff alleges that he has been deprived of his constitutional rights to due process and equal protection, that he has been subjected to cruel and unusual punishment and false imprisonment, and that prison officials were deliberately indifferent to these violations. (D.I. 2) Plaintiff seeks compensatory and punitive damages and the reinstatement of lost wages. (*Id.*)

### A. Eleventh Amendment and Sovereign Immunity

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege "the violation of a right secured by the Constitution or laws of the United States and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988) (citing *Parratt v. Taylor*, 451 U.S. 527, 535 (1981) (overruled in part on other grounds not relevant here by, *Daniels v. Williams*, 474 U.S. 327, 330-31 (1986)). "[T]he Supreme Court has held that neither a State nor its officials acting in their official capacities are 'persons' under § 1983." *Ospina v. Dep't of Corrections, State of Delaware*, 749 F. Supp. 572, 577 (D. Del. 1991) (citing *Wills v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989)). "Absent a state's consent, the Eleventh Amendment bars a civil rights suit in federal court that names the state as a defendant." *Laskaris v. Thornburgh*, 661 F.2d 23, 25 (3d Cir. 1981) (citing *Alabama v. Pugh*, 438 U.S. 781 (1978) (per curiam)). Waiver of a state's Eleventh Amendment immunity must be "an 'unequivocal' statement of the state's intention to subject itself to

---

[10]Pro se litigants' submissions "are to be construed liberally and held to less stringent standards than submissions of lawyers. If the court can reasonably read the submissions, it should do so despite failure to cite proper legal authority, confusion of legal theories, poor syntax and sentence construction, or litigant's unfamiliarity with rule requirements." *Boag v. MacDougall*, 454 U.S. 364 (1982).

suit *in federal court.*"  *Ospina*, 749 F. Supp. at 579 (quoting *Westinghouse Elec. Corp. v. West Virginia Dep't of Highways*, 845 F.2d 468, 470 (4th Cir. 1988) (citations omitted)).

Plaintiff has sued all of the individual defendants in both their individual and official capacities.  (D.I. 2 ¶¶ 1-6, 8-11; D.I. 50 ¶ 1; D.I. 59; D.I. 85)  As a matter of law, suits against individuals acting in their official capacities are barred by the Eleventh Amendment.  Furthermore, the Department of Correction, as a state agency, is not a person under § 1983 and a suit against a state agency is a suit against the state.  The State of Delaware has neither waived its immunity under the Eleventh Amendment nor consented to plaintiff's action.  Therefore, summary judgment is granted in favor of the Department of Correction and defendants Taylor, Bianco, Records, George, Michael Costello, Barbara Costello, and Raymond as to all claims against them in their official capacities.

### B. Respondeat Superior & Personal Involvement

Plaintiff wishes to hold defendants Taylor, Bianco, Records, George, and Michael Costello liable for failing to have adequate procedures in place which would have provided for his timely return to MCCC.  (D.I. 2)  However, liability in a § 1983 action cannot be predicated solely on the operation of respondeat superior.  *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988).  Rather, a "defendant in a civil rights action must have personal involvement in the alleged wrongs."  *Id.*  A plaintiff may set forth a claim for supervisory liability under § 1983 if he

> (1) identif[ies] the specific supervisory practice or procedure that the supervisor failed to employ, and show[s] that (2) the existing custom and practice without the identified, absent custom or procedure created an unreasonable risk of the ultimate injury, (3) the supervisor was aware that this unreasonable risk existed, (4) the supervisor was indifferent to the risk; and (5) the underling's violation

resulted from the supervisor's failure to employ that supervisory practice or procedure.

*Brown v. Muhlenberg Twp.*, 269 F.3d 205, 216 (3d Cir. 2001) (citing *Sample v. Diecks*, 885 F.2d 1099, 1118 (3d Cir. 1989)). It is not enough for a plaintiff to argue that the alleged injury would not have occurred if the supervisor had "done more." *Id.* He must identify specific acts or omissions of the supervisor that evidence deliberate indifference and establish a link between the act or omission and the ultimate injury. *Id.*

Defendants Taylor, Bianco, Records, George, and Michael Costello have all been named on the basis of their alleged failure to supervise. More specifically: 1) Taylor was named because he was "directly responsible" for making sure that the personnel in the facilities under his care had "proper knowledge" about allowable sanctions for prisoners; 2) Bianco was named because "he [was] in charge of all inmates within MCCC and as well as inmates at Violation of Probation Center"; 3) Records was named because he was a "supervisor, director, whatever, for the Central Violations of Probation Center"; 4) George was named because he was the warden of SVOP and "it [was] his responsibility to insure that all requirements are met for the individuals [working under his supervision]"; and 5) Michael Costello was named because it was his responsibility to oversee "any reviews of individuals who have been placed at [his] facility." (D.I. 99, ex. B at p. 18, 20-21, 22, 27; D.I. 104 ¶¶ 6-9) It is evident from the record that these defendants had no personal involvement in the alleged constitutional violations against plaintiff and all § 1983 liability is predicated upon the theory of respondeat superior. Plaintiff, therefore, has no basis in law or fact for these claims. Accordingly, summary

judgment is granted in favor of defendants Taylor, Bianco, Records, George, and Michael Costello as to all claims against them in their individual capacities.

## C. Due Process

Plaintiff's due process claims allege that he was prevented from attending the disciplinary meeting of the MDT on July 29, 2004 and that the procedures at SVOP by which inmates can obtain mailing supplies effectively prohibit an inmate's ability to appeal sanctions, thereby violating his right to due process. (D.I. 2) Defendants move for summary judgment on the grounds that plaintiff has no constitutional right to his classification as an inmate. (D.I. 99)

### 1. Liberty Interest

The Due Process Clause protects liberty interests created by the laws or regulations of a state and provides inmates with "freedom from restraint" which impose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *See Sandin v. Conner*, 515 U.S. 472, 484 (1995). Inmates have "no legitimate statutory or constitutional entitlement" to any particular custodial classification even if a new classification would cause that inmate to suffer a "grievous loss." *Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976). Neither Delaware law nor Delaware Department of Correction regulations create a liberty interest in a prisoner's classification within an institution. *See* 11 Del. C. § 6529(e). "'As long as the conditions or degree of confinement to which [a] prisoner is subjected is within the sentence imposed upon him and is not otherwise violative of the Constitution, the Due Process Clause does not in itself subject an inmate's treatment by prison authorities to judicial oversight.'" *Hewitt v.*

*Helms*, 459 U.S. 460, 468 (1983) (quoting *Montanye v. Haymes*, 427 U.S. 236, 242 (1976)).

Plaintiff wishes to hold defendants Raymond and Barbara Costello liable for due process violations surrounding his sanction. Specifically, he alleges that defendant Raymond prevented him from being present at the MDT review by not informing him of the time and date of the meeting. (D.I. 2; D.I. 104 ¶ 5) He further alleges that both defendants Raymond and Barbara Costello failed to provide for his immediate return to MCCC. (D.I. 2; 104 ¶ 10) He asserts that he has a constitutional right to work release because he was originally sentenced to that level of supervision by the Superior Court of Delaware and that his bed space at MCCC should have been held for him pending his completion of the 14 day sanction at SVOP. (D.I. 99, ex. B at 18; D.I. 104 ¶ 4)

As explained above, plaintiff has no constitutionally protected right to his classification as an inmate for due process purposes. Plaintiff does not allege that he suffered any "atypical" or "significant hardship" by being housed at SVOP or CVOP as compared to MCCC. Furthermore, his sanction and transfer from MCCC to SVOP and then to CVOP to await space at MCCC was within his original sentence imposed. As such, plaintiff has no basis in law or fact for his allegations of due process rights violations surrounding his failure to attend the MDT meeting of July 29, 2004. Accordingly, defendants' motion for summary judgment is granted in favor of defendants Raymond and Barbara Costello as to the claims of due process violations surrounding the July 29, 2004 MDT meeting.

10

### 2. Grievance Process

The filing of a prison grievance is a constitutionally protected activity. *Robinson v. Taylor*, No. 05-4492, 2006 WL 3203900, at *1 (3d Cir. Nov. 7, 2006). Although prisoners have a constitutional right to seek redress of grievances as part of their right of access to courts, this right is not compromised by the failure of prison officials to address these grievances. *Booth v. King*, 346 F. Supp. 2d 751, 761 (E.D. Pa. 2004). This is because inmates do not have a constitutionally protected right to a grievance procedure. *Burnside v. Moser*, No. 04-4713, 138 Fed. Appx. 414, 416 (3d Cir. 2005) (citations omitted) (failure of prison officials to process administrative grievance did not amount to a constitutional violation). Nor does the existence of a grievance procedure confer upon prison inmates any substantive constitutional rights. *Hoover v. Watson*, 886 F. Supp. 410, 418-19 (D. Del.), *aff'd* 74 F.3d 1226 (3d Cir. 1995). Similarly, the failure to investigate a grievance does not raise a constitutional issue. *Hurley v. Blevins*, No. Civ. A. 6:04CV368, 2005 WL 997317 (E.D. Tex. Mar. 28, 2005).

Construing plaintiff's complaint liberally, he wishes to hold defendants Raymond and Barbara Costello liable for violating his constitutional right of due process for failing to have an adequate appeal process of MDT decisions in place. (D.I. 2 ¶ 71) However, as explained above, plaintiff has no constitutional basis to object to the adequacy of an appeal process. Accordingly, summary judgment is granted in favor of defendants Raymond and Barbara Costello as to all due process claims in relation to the appeal process of the MDT sanction.

## D. Equal Protection

Plaintiff wishes to hold defendants Raymond and Barbara Costello liable for violating his equal protection rights. Specifically, he alleges that he was denied equal protection rights by defendant Raymond because: 1) he was prevented from attending the MDT meeting of July 29, 2004; 2) the MDT removed him from work release and did not provide for his immediate return to work release; and 3) the appeals process of MDT decisions is allegedly deficient. (D.I. 2) He alleges that defendant Barbara Costello denied him equal protection under the laws by failing to return him immediately to MCCC. (*Id.*; D.I. 104 ¶ 10) Defendants move for summary judgment on the grounds that he has no constitutional right to his classification as an inmate. (D.I. 99)

The Equal Protection Clause provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. Amend. XIV, § 1. Under that provision, "persons who are similarly situated should be treated in the same manner." *Tillman v. Lebanon County Correctional Facility*, 221 F.3d 410, 423 (3d Cir. 2000); *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439 (1985). In order to state a claim for an equal protection violation in a prison setting, an inmate

> must demonstrate that he was treated differently than others similarly situated as a result of intentional or purposeful discrimination. . . . He must also show that the disparity in treatment cannot survive the appropriate level of scrutiny, which, in a prison setting, means that [a plaintiff] must demonstrate that his treatment was not "reasonably related to [any] legitimate penological interests."

*Phillips v. Girdich*, 408 F.3d 124, 129 (2d Cir. 2005) (internal citation, quotation marks, and alterations omitted); *see also Wilson v. Schillinger*, 761 F.2d 921, 929 (3d Cir. 1985). Courts have consistently held that, in the absence of a fundamental right or a protected class, equal protection only requires that a regulation which results in unequal

treatment of an inmate bear some rational relationship to a legitimate penological interest. See *McGinnis v. Royster*, 410 U.S. 263 (1973); *Hodges v. Klein*, 562 F.2d 276 (3d Cir. 1977).

Plaintiff has not met the first threshold of an equal protection claim because he has failed to allege any different treatment than similarly situated inmates. For instance, there are no allegations of inmates wishing to attend MDT meetings being specifically informed of the time and date of said meetings. There are no allegations of inmates being sanctioned to lesser time at SVOP for having been found guilty of similar offenses. Nor are there any allegations of inmates being returned immediately to MCCC after serving sanctions at SVOP or of similarly situated inmates spending less time at CVOP awaiting return to MCCC. Plaintiff's only assertion in his complaint that he was treated differently from other inmates is that, while at CVOP, he "notic[ed] numerous offenders being transferred back to [MCCC]." (D.I. 2 ¶ 30) For these reasons, plaintiff's equal protection claims must fail. Accordingly, defendants' motion for summary judgment is granted in favor of defendants Raymond and Barbara Costello as to all equal protection claims.

### E. Cruel and Unusual Punishment, Deliberate Indifference & False Imprisonment

Plaintiff has sued defendant Barbara Costello for cruel and unusual punishment and deliberate indifference for her failure to "correct" the 14 day sanction at SVOP and return him immediately to MCCC. (D.I. 2 ¶ 73) He has sued defendant Raymond for false imprisonment, deliberate indifference, and cruel and unusual punishment for his part in the MDT sanction. (*Id.* at ¶ 70; D.I. 50)

13

Plaintiff claims that his sanction of 14 days at CVOP is in violation of Delaware law, 11 Del. C. § 4334 (d), which reads, in pertinent part:

> [T]he Department is authorized to administratively resolve technical and minor violations of the conditions of probation or supervision at Accountability Levels I, II, III or IV when a sanction less restrictive than Level V is being sought by the Department as a result of the violation, and is further authorized to administratively resolve technical and minor violations of conditions of **probation** at Accountability Levels I, II, III, or IV by placing the **probationer** at Accountability Level IV for a period of not more than 5 days consecutively, and not more than 10 days in any 1 calendar year.

*Id.* (emphasis added). Plaintiff alleges that his sanction of 14 days at SVOP violates the limitation of five consecutive days as set forth in 11 Del. C. § 4334 (d) and constitutes cruel and unusual punishment. The basis for his claim is that the sentence he received was "outside the guidelines that's [sic] required for [MCCC] to issue." (D.I. 99, ex. B at 18)

Plaintiff has misread the statute. (D.I. 37) This section of title 11 applies only to probationers. At the time the sanction was imposed by the MDT, plaintiff was not a probationer (Level III) but was an inmate housed at the MCCC, a Level IV facility. Therefore, § 4334 (d) and its limitation of five consecutive days at Level IV confinement does not apply to plaintiff. Accordingly, summary judgment is granted to defendants Raymond and Barbara Costello as to all claims of cruel and unusual punishment and deliberate indifference. Summary judgment is granted in favor of defendant Raymond as to the claim of false imprisonment.

## V. Plaintiff's Motion for Appointment of Counsel

Plaintiff moves for the appointment of counsel on the grounds that the issues are complex, that he requires counsel to handle procedural issues that would hinder or defeat an otherwise successful claim, that his claims have merit, that the case may require expert testimony, and that he is unable to present the claims himself. (D.I. 5) A *pro se* litigant proceeding *in forma pauperis* has no constitutional or statutory right to representation by counsel. See *Ray v. Robinson*, 640 F.2d 474, 477 (3d Cir. 1981); *Parham v. Johnson*, 126 F.3d 454, 456-57 (3d Cir. 1997). It is within the court's discretion to seek representation by counsel for plaintiff, and this effort is made only "upon a showing of special circumstances indicating the likelihood of substantial prejudice to [plaintiff] resulting . . . from [plaintiff's] probable inability without such assistance to present the facts and legal issues to the court in a complex but arguably meritorious case." *Smith-Bey v. Petsock*, 741 F.2d 22, 26 (3d Cir. 1984); *accord Tabron v. Grace*, 6 F.3d 147, 155 (3d Cir. 1993) (representation by counsel may be appropriate under certain circumstances, after a finding that a plaintiff's claim has arguable merit in fact and law).

After passing this threshold inquiry, the court should consider a number of factors when assessing a request for counsel, including: (1) the plaintiff's ability to present his or her own case; (2) the difficulty of the particular legal issues; (3) the degree to which factual investigation will be necessary and the ability of the plaintiff to pursue investigation; (4) the plaintiff's capacity to retain counsel on his own behalf; (5) the extent to which a case is likely to turn on credibility determinations; and (6) whether the

case will require testimony from expert witnesses. *Tabron*, 6 F.3d at 155-57; *accord Parham*, 126 F.3d at 457; *Montgomery v. Pinchak*, 294 F.3d 492, 499 (3d Cir. 2002).

Upon consideration, the court is not persuaded that appointment of counsel is warranted at this time. Plaintiff has demonstrated an ability to present his claims and there is no evidence that prejudice will result in the absence of counsel. Therefore, plaintiff's motion for appointment of counsel is denied without prejudice.

## VI. CONCLUSION

For the reasons stated above, the court will grant defendants' motion for summary judgment on all counts as to defendants Taylor, Bianco, Records, George, Michael Costello, Barbara Costello, Department of Correction, and Raymond. The court will deny plaintiff's motions for appointment of counsel.

An appropriate order will issue.